UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHUKRULLO TAVUROV,

                    Petitioner,

        v.

KRISTI LYNN ARNOLD NOEM, et al.,

                    Respondent.

Case No. 2:26-cv-00668-TLF

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

Petitioner Shukrullo Tavurov, by counsel, filed a 28 U.S.C. § 2241 petition for writ of habeas corpus. Dkts. 1, 6, 11. The parties have unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 3. Petitioner brought a previous petition for writ of habeas corpus ("first petition") in this Court challenging his prolonged detention and seeking, either release or a bond hearing. *See Tavurov v. Noem*, 2:26-CV-00138-TLF, 2026 WL 323054 (W.D. Wash. Feb. 6, 2026). The Court granted the first petition in part and directed the immigration judge ("IJ") to conduct a bond hearing with specific requirements. *Id.*

Petitioner now brings a second petition challenging the February 12, 2026, bond hearing – conducted pursuant to the order of this Court -- in which he was denied bond and seeking his immediate release on the grounds that the hearing violated due

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

process. Dkts. 6, 11. The Government[1] has filed a response to the current petition, petitioner has filed a reply, and the matter is ripe for review. Dkts. 10, 12.

For the reasons below, the Court GRANTS the petition (Dkts. 6, 11) and ORDERS that petitioner should be released within 24 hours of the date and time of issuance of this of this order, on appropriate conditions of release. The Court further ORDERS that the Government shall file a certification that petitioner has been released from immigration custody within 48 hours of the date and time this order was issued.

## BACKGROUND

The facts related to petitioner's detention and removal proceedings were summarized by this Court in the February 6, 2026, order granting petitioner's first habeas petition in part:

> Petitioner is a native of Tajikistan and citizen of Russia and Tajikistan. Dkt. 7 (Delgado Decl.) at ¶ 3; Dkt. 8 (Johnson Decl.) at Exs. B, D. On May 3, 2024, petitioner applied to enter the United States from Mexico and was encountered by U.S. Customs and Border Protection (CBP). *Id.* Petitioner admitted to CBP that he did not have any documents that would allow him to enter the United States. *Id.* He was processed for expedited removal. *Id.* While in CBP custody, petitioner expressed fear of returning to Tajikistan and Russia. *Id.* CPB detained petitioner under INA § 235(b)(1) (codified at 8 U.S.C. § 1225(b)(1)). *Id.*
>
> On May 24, 2024, petitioner was interviewed by a United States Citizenship and Immigration Services ("USCIS") asylum officer who determined that petitioner had a credible fear of return to Tajikistan. Dkt. 7 (Delgado Decl.) at ¶ 4; Dkt. 8 (Johnson Decl.) at Ex. C. That same day, CBP issued a Notice to Appear (NTA) charging petitioner with being removable pursuant to INA § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I) and placing him into removal proceedings. *Id.*
>
> On September 4, 2024, petitioner filed an I-589, Application for Asylum and Associated Relief with the Immigration Court. Dkt. 7 (Delgado Decl.) at ¶ 5. Petitioner was transferred to NWIPC on September 10, 2024. *Id.* at ¶ 6.
>
> On January 9, 2025, petitioner, through counsel, filed a motion to continue his removal proceedings. Dkt. 7 (Delgado Decl.) at 2. The motion was granted on January 29, 2025, and the Immigration Court set a new hearing date for July 24, 2025. *Id.*

---

[1] Hereinafter the Court refers the respondents collectively as "the Government."

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

Petitioner applied for and, in May 2025, was granted Special Immigrant Juvenile status (SIJ). Dkt. 1 at 4, 8-9; Dkt. 2 (Decl. of Marina Dzhamilova ("Dzhamilova Decl.")) at Ex. 1.

On July 11, 2025, the Immigration Court granted petitioner's motion for substitution of counsel in his removal proceedings. Dkt. 7 (Delgado Decl.) at 2. On July 22, 2025, the Immigration Court granted petitioner's second motion to continue. *Id.* On August 26, 2025, petitioner began his Individual Hearing regarding his Form I-589 but the hearing was not completed on that date and was reset to October 2, 2025. *Id.* On October 2, 2025, petitioner submitted additional testimony and evidence at the hearing, but the hearing was not completed. *Id.*

On October 31, 2025, petitioner appeared with counsel at a bond hearing before an Immigration Judge. *Id.* at ¶ 12; Dkt. 8 (Johnson Decl.) at Ex. E. The Immigration Judge denied petitioner's bond due to lack of jurisdiction because petitioner was an "arriving alien." *Id.* Petitioner requested reconsideration of the bond determination due to changed circumstances based upon his grant of SIJ status and argued it should be considered "as parole" of petitioner into the United States. Dkt. 1 at 9; Dkt. 9 (Traverse) at 2.

On November 6, 2025, petitioner appeared and submitted additional testimony and evidence at the Individual Hearing, but the hearing was not completed. Dkt. 7 (Delgado Decl.) at 2.

On November 17, 2025, the Immigration Judge denied petitioner's request for reconsideration of the denial of bond finding no changed circumstances because petitioner was still an "arriving alien." Dkt. 7 (Delgado Decl.) at ¶ 14; Dkt. 8 (Johnson Decl.) at Ex. F.

On December 4, 2025, petitioner appeared to continue the Individual Hearing and submitted additional testimony and evidence, and the hearing was completed. *Id.* On December 15, 2025, the Immigration Judge issued a written order denying petitioner's request for relief under form I-589, Application for Asylum and Associated Relief, and ordered petitioner's removal to Russia. Dkt. 7 ("Delgado Decl.") at ¶ 16. On December 18, 2025, petitioner filed a timely Notice of Appeal to the Board of Immigration Appeals (BIA). *Id.* at ¶ 17. Petitioner's appeal remains pending. *Id.*

On January 14, 2026, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, through counsel, arguing his continued detention under 8 U.S.C. § 1225(b) without a bond hearing violates his due process rights under the Fifth Amendment to the United States Constitution and the Eighth Amendment prohibition against excessive bail. *Id.*

*Tavurov v. Noem*, 2026 WL 323054 at *1-3.

On February 6, 2026, this Court granted the first petition and ordered, in relevant part, the Government to:

Hold a bond hearing **to occur within 7 calendar days** of this order.
1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) – there must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

and convincing evidence that petitioner is a flight risk or danger to the community;

2. The Immigration Judge shall allow petitioner to present evidence of financial circumstances or alternative conditions of release that would mitigate any potential dangerousness or risk of flight;

3. Or, in the alternative, the Government shall immediately release petitioner under appropriate conditions of release.

*Id.*

On February 12, 2026, a bond hearing was held. Dkt. 8-1 at 2-18. In an oral ruling at the close of the hearing, the IJ denied petitioner bond finding that the Government had shown by clear and convincing evidence that petitioner was a flight risk. *Id.* at 16.

On February 25, 2026, petitioner filed this second habeas corpus petition. *See* Dkts. 1, 6, 11. Petitioner alleges the February 12, 2026, bond hearing violated due process and the specific procedural mandates of this Court's prior order. Dkt. 6 at 2. He alleges the bond hearing was procedurally inadequate due to the IJ's failure to apply the correct legal standard, the absence of a functional contemporaneous record, the failure to provide a meaningful individualized determination, and failure to consider how alternatives to detention impacted the flight risk determination. Dkt. 6 at 3-4, 10.

## DISCUSSION

### A.    Subject Matter Jurisdiction

The Court generally lacks jurisdiction to review discretionary bond decisions. Under 8 U.S.C. § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

But, § 1226(e) does not bar "habeas jurisdiction over constitutional claims or

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court. . ., we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Thus, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

This Court's habeas review of the immigration court's determination as to dangerousness and flight risk is for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779, 784-85 (9th Cir. 2024). Under an abuse of discretion standard, the court cannot reweigh evidence; the Court can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

Petitioner argues the bond hearing violated due process and this Court's prior order in that it was procedurally inadequate due to the IJ's failure to apply the correct legal standard, the absence of a functional contemporaneous record, the failure to provide a meaningful individualized determination, and the failure to consider how alternatives to detention impacted the flight risk determination. Because the petition challenges the constitutionality of the bond hearing, the Court has subject matter jurisdiction over petitioner's claims. *Martinez*, 124 F.4th at 784-85.

**B.      Exhaustion of Administrative Remedies**

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

In the context of habeas review under 28 U.S.C. § 2241, exhaustion of administrative remedies, "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted).

Nevertheless, even where these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal citation and quotation marks omitted).

Here, with respect to the first factor, "[p]etitioner raises a constitutional challenge to the adequacy of his bond hearing, which is better suited to review by the federal courts." *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Scott v. Wamsley*, No. 2:25-CV-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, No. 2:25-CV-1819, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026) (finding that due process and statutory challenge to continued detention is "fundamentally a question of law")). The first *Puga* factor weighs against requiring prudential exhaustion.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

With respect to the second factor, although relaxation of prudential exhaustion may, to some extent, encourage others to bypass the administrative appellate procedures, the petitioner raises specific constitutional challenges to the IJ's application of the burden of proof and failure to consider alternatives to detention in determining flight risk, and a decision would likely "be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026). Accordingly, this factor weighs neutral. *Id.*

Turning to the third factor, "the defect[s] alleged by Petitioner [are] constitutional in nature, and it is unlikely that appeal to the BIA will permit the agency to correct a factual or evidentiary oversight by the IJ." *W.T.M.*, 2026 WL 262583, at *3. The third *Puga* factor weighs against requiring prudential exhaustion.

And even if the above factors weighed in favor of requiring exhaustion, the Court finds waiver is appropriate under *Laing*. 370 F.3d 994. Here, petitioner has presented individualized evidence, related to his mental health struggles, that supports a finding that his continued detention for a potentially lengthy period of time, pending a BIA appeal of the IJ's bond denial decision would create a risk of irreparable harm. *See* Dkt. 1-1 at 46-204 (medical records reflecting diagnosis of Major Depressive Disorder and Posttraumatic Stress Disorder and petitioner's mental health difficulties including suicidal thoughts, possible suicide attempts and self-harm while detained in summer 2025); *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (recognizing irreparable harms imposed on individuals in immigration detention, including "subpar

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

medical and psychiatric care in ICE detention facilities"); *W.T.M.*, 2026 WL 262583, at *3.

As several courts in this district have recently noted in waiving exhaustion, data released by the Executive Office for Immigration Review, reflects that the average processing time for bond appeals in 2024 exceeded 200 days. *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1248– 49 (W.D. Wash. April 24, 2025) (due to the length of processing time for BIA bond appeals, requiring exhaustion "will result in irreparable injury because [petitioner] will not have a meaningful opportunity to show his entitlement to bond"); *W.T.M.*, 2026 WL 262583, at *3.

And finally, petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile." *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) (citing *Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we administer."); *see also Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 238 (W.D.N.Y. Jan. 16, 2019) (waiving exhaustion requirement because "the BIA does not have jurisdiction to adjudicate constitutional issues")).

The Court declines to require petitioner to exhaust his administrative remedies prior to pursuing this action.

**C.      Due Process/Abuse of Discretion**

Petitioner argues that the bond hearing violated due process and this Court's prior order because there was no adequate contemporaneous record. Petitioner's

counsel contends portions of her argument were inaudible and that therefore the record was inadequate. Dkts. 6, 11. Due process, and this Court's prior order, required a contemporaneous record be made of the bond hearing. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *Tavurov v. Noem*, 2026 WL 323054.

The parties submitted the transcript of the bond hearing to the Court. Dkt. 1-1; 8-1. But in reviewing the transcript, the Court is unable to determine any relevant statements that were inaudible or were not captured by the transcript. And petitioner fails to adequately identify which portions of the hearing, or which of her specific statements or arguments were inaudible or were not captured by the transcript. Accordingly, the Court is unable to conclude on this record that the hearing failed to provide an adequate contemporaneous record in violation of due process.

Petitioner next argues the bond hearing violated due process and this Court's prior order because the IJ failed to apply the clear and convincing standard, failed to provide a meaningful individualized determination, and failed to consider how alternatives to detention impacted the flight risk determination.

The "clear and convincing evidence standard" has been defined as the standard of proof that "indicat[es] that the thing to be proved is highly probable or reasonably certain." *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001), *overruled on other grounds by United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (quoting Black's Law Dictionary 577 (7th ed.1999)). "The 'clear and convincing' standard requires the Government to present evidence to establish 'an abiding conviction that the truth of [the] factual contentions at issue is highly probable.'" *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734587, at *7 (C.D. Cal. Feb. 20, 2026), *report*

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

*and recommendation adopted*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (quoting *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc). This is a is "a high burden and must be demonstrated in fact, not 'in theory.' " *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (quoting *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)); *see also Perez v. Wolf*, 445 F. Supp. 3d 275, 287 (N.D. Cal. 2020) (collecting cases applying the "high standard" of "clear and convincing" evidence).

"When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Hechavarria*, 358 F. Supp. 3d at 240. "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* "Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Id.*

"[T]he IJ's mere recitation of the applicable legal standard is not enough when the IJ's decision makes it clear ... that the IJ did not actually apply the standard in his reasoning and decision." *Ramos-Portillo v. McAleenan*, No. 18-cv-0260-MWF-SS, 2019 WL 3246499, at *1 (C.D. Cal. July 19, 2019). "It is the application of the clear-and-convincing standard, not its recitation, that matters." *Id.*; *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.").

"When determining whether a noncitizen is a danger to the community or risk of

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

flight, an IJ weighs nine factors, pursuant to BIA precedent." *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez*, 124 F.4th at 783). The factors the IJ "may" consider "include any or all of the following;"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

The record reflects that the Government submitted as evidence at the bond hearing only petitioner's Form I-213 and the December 15, 2025, removal order by the IJ. Dkst. 8-2, 8-3. The Government argued petitioner was a flight risk based solely on his final removal order and that the IJ had found petitioner was not persuasive in presenting his claims for relief in his removal proceedings.[2] Dkt. 8-1 at 4.

The record reflects the petitioner submitted as evidence at the bond hearing: A copy of his brother's (Abumuslim Tavurov's)  lease agreement, work permit valid through October 25, 2028, and his bank statement reflecting his current income as well as a sworn declaration from petitioner's brother verifying that he will help his brother obtain medical treatment upon release (Dkt. 1-1 at 259); a sworn declaration from petitioner's brother's girlfriend of three years (Ms. Phuong) a United States citizen, who

---

[2] The Government initially argued that the IJ had found petitioner not credible in the removal order, but it was subsequently clarified that the IJ had not made a negative credibility finding. *See* Dkt. 8-1 at 4-8.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

states that petitioner can live with her and her family, and she will help support petitioner financially and ensure he appears for his court proceedings (*Id.* at 234); copies of Ms. Phuong's U.S. Passport, New York Driver's license, New York cosmetology license, copies of paystubs verifying current income, and bank statement; a sworn declaration from Ms. Phuong's father stating that petitioner can reside in their family's home if released for as long as necessary and a copy of a National Grid utility statement verifying Mr. Phuong as the account holder at a property in Brooklyn, New York, which Mr. Phuong states he owns (*Id.* at 256); petitioner's medical records reflecting his mental health history while detained at NWIPC (*Id.* at 46-204); a copy of a USCIS approval notice for petitioner's Special Immigrant Juvenile Status with a priority date of May 7, 2025 (*id.* at 336); Findings and Conclusions Regarding Eligibility for SIJ Status entered by the Pierce County Juvenile Court on May 2, 2025 (*id.* at 40-43); a January 14, 2025, decision and a November 19, 2025, decision in *A.C.R. v. Noem*, No. 25-cv-3963 (E.D.N.Y.) (*id.* at 275-323, 337-354); a printout of a practice advisory following the decision in *A.C.R. v. Noem*, No. 25-cv-3963 (E.D.N.Y.) (*id.* at 221-224).

The only evidence presented by the Government at the bond hearing was a copy of petitioner's Form I-213 which does not appear to contain, or was not cited to in the hearing as containing evidence of flight risk, and a copy of the removal order which the Government noted reflected that the IJ had found petitioner "not persuasive" with respect to his claims for relief in the removal hearing. Dkts. 8-2, 8-3.

The BIA directs an IJ "may consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond" based on the rationale that a noncitizen who likely faces inevitable removal may be less likely to appear at future

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12

removal hearings. *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020). But the fact of a removal order is not sufficient by itself to deny bond. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) ("[T]he only evidence the BIA cited for its affirmance of the IJ's conclusion that Singh was a flight risk was the fact—common to *all* detainees afforded *Casas* bond hearings—that Singh had already been ordered removed by a final, administrative order, diminishing his incentive to appear for further removal proceedings. Although this is a relevant factor in the calculus, it alone does not constitute clear and convincing evidence that Singh presented a flight risk justifying denial of bond.").

Thus, the only evidence submitted by the Government was insufficient to establish petitioner was a flight risk by clear and convincing evidence.

No evidence was presented that petitioner had any criminal history, any history of attempts to flee prosecution or authorities, or any record of not appearing in court. At the hearing the IJ asked whether petitioner had previously been released into the country to which petitioner's counsel answered that he had not as he was detained upon his arrival to the United States. Dkt. 8-1 at 11-12. The Government did not argue that the fact petitioner had never been released or resided (outside of detention) in the country should be considered as evidence that petitioner would be a flight risk, nor would the mere fact petitioner had not been previously released (and thus did not have the opportunity to demonstrate a record of appearing for court as required) constitute affirmative evidence sufficient to demonstrate flight risk by clear and convincing evidence, i.e., that it is highly probable or reasonably certain that petitioner would be a flight risk.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 13

Petitioner's evidence reflected he has a brother who, although not a United States Citizen, is pursuing an asylum case, has a work permit, and a place to live. It also reflects his brother's long-term girlfriend is able to provide petitioner a stable place to live as well as financial assistance and to ensure petitioner appears for court appearances. Petitioner also presented evidence at the bond hearing that he was granted Special Immigrant Juvenile status ("SIJS") and cited to *A.C.R. v. Noem*, No. 25-CV-3962 (EK)(TAM), 2025 WL 3228840, at *2 (E.D.N.Y. Nov. 19, 2025), *reconsideration denied*, No. 25-CV-3962 (EK)(TAM), 2026 WL 102611 (E.D.N.Y. Jan. 14, 2026) where the District Court for the Eastern District of New York granted a motion for preliminary injunction in part and stayed recission of a 2022 Policy Alert which required USCIS to automatically consider whether an SIJS petitioner should receive deferred action.

The Court in *A.C.R.* explained that:

> Under the SIJS-DA [SIJS-Deferred Action] program, USCIS automatically considered whether an SIJS petitioner should receive deferred action. 2022 Policy Alert 3. SIJS-DA did not guarantee that an applicant would *receive* deferred action but rather that they would be considered for it. Under SIJS-DA, USCIS hearing officers would grant deferred action if the "totality of the facts and circumstances" supported doing so. Compl. ¶ 66; *see also* 2024 USCIS Policy Manual 5, ECF No. 9-26 (hereinafter "2024 Policy Manual"). One "strong positive" factor in favor of approval was whether the applicant had received a court order declaring him eligible for the SIJS program. Compl. ¶ 66; *see also* 2024 Policy Manual 5. In other words, SIJS created a presumption in favor of deferred action.

*A.C.R*, 2025 WL 3228840, at *2. The Court further explained that in April 2025, the USCIS began issuing SIJS approvals without corresponding deferred-action approvals and on June 6, 2025, issued a Policy Alert "'eliminat[ing] automatic consideration of deferred action (and related employment authorization)' for SIJS beneficiaries who

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 14

could not apply for adjustment of status because a visa was not available." *A.C.R*, 2025 WL 3228840, at *3 (quoting 2025 Policy Alert 2).

Petitioner argued, and presented evidence at the bond hearing, that he was granted SIJS without deferred-action in May 2025 and that pursuant to the Court's decision in *A.C.R.*, the USCIS is required to consider him for deferred-action status. Dkt. 8-1 at 10-11; *A.C.R*, 2025 WL 3228840.

The Government did not challenge the evidence presented by petitioner or argue any other factors showed petitioner was a flight risk by clear and convincing evidence.

The record here reflects the IJ improperly shifted the burden of proof to the petitioner to show he was not a flight risk. The evidence presented by the Government was not sufficient on its own to establish petitioner was a flight risk by clear and convincing evidence and in finding flight risk based on the record, the IJ effectively found petitioner's presentation of evidence regarding family and community ties and support and potential to be granted SIJS deferred action status, was not sufficient to show he was *not* a flight risk. *See N.A., Petitioner, v. WARDEN, ADELANTO DETENTION FACILITY, et al., Respondents.*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *9 (C.D. Cal. Apr. 15, 2026) (Finding the IJ failed to apply the correct burden and standard of proof [-- that the Government must show flight risk or danger by clear and convincing evidence --] at the bond hearing where "[t]hroughout the hearing and its decision, IJ similarly construed evidence (or the absence of evidence) against Petitioner even though DHS had presented no evidence or argument to support the IJ's interpretation" and specifically noting that the IJ rejecting the credibility and viability of a

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 15

proposed sponsor despite DHS itself not questioning the viability of the sponsor and finding it "therefore not clear how the IJ could conclude, by clear and convincing evidence, that the sponsor would be unable to house and support Petitioner while his immigration proceedings proceed.").

The IJ's decision makes it clear that "the IJ did not actually apply the standard [that the Government must prove flight risk or danger by clear and convincing evidence] in his reasoning and decision." *Ramos-Portillo*, 2019 WL 3246499, at *1. The record before the Court shows the IJ abused his discretion in finding the Government established petitioner was a flight risk by clear and convincing evidence. The Court further finds that the evidence itself could not—as a matter of law—have supported the IJ's conclusion – that the Government showed petitioner was a flight risk by clear and convincing evidence. *See Hechavarria*, 358 F. Supp. 3d at 240.

Finally, in its order granting petitioner's first petition in part, the Court directed that:

Regardless of whether the Government meets its burden of proof to show dangerousness or risk of flight by clear and convincing evidence, petitioner has a due process liberty interest in showing (and the IJ considering) whether, if he were allowed bond, he could afford it and whether there are conditions of release that would mitigate any danger and allow the immigration authorities to monitor him and assure his appearance for future actions of the Immigration Court. *See Black v. Decker*, 103 F.4th 133, 145-159 (2d Cir. 2024)[ ] (upholding a district court decision requiring the immigration court to consider ability to pay, and potential conditions of release that would ensure his appearance, when setting a bond amount); *Cantor v. Freden*, 761 F. Supp. 3d 630, 638-640 (W.D.N.Y. 2025) (holding that in determining whether petitioner poses a flight risk, the IJ must consider whether that risk may be mitigated by reasonable conditions of supervision or monetary bond and in determining whether petitioner poses a danger to the community, the IJ also must consider whether that danger may be mitigated by reasonable alternatives to detention); *but see, Ashmuke v. ICE Field Office Director,* No. C23-1592-RSL, 2024 WL 4436949 (WD Wash. October 7, 2024) at *5 (finding *Singh* "does not require the [IJ in conducting a bond hearing] to consider less restrictive alternative to detention in these circumstances").

The petitioner should be allowed to present evidence regarding proposed conditions for supervised release in the community and that posting bond would

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 16

be financially infeasible. *See M.P.L. v. Arteta,* No. 25-CV-5307 (VSB)(SDA), 2025 WL 2938993 (S.D.N.Y. October 16, 2025) at *5-*7 (analyzing the due process protections and why a finding of non-dangerousness should not be a prerequisite to consideration of ability to pay and possible conditions of release).

*Tavurov v. Noem*, 2026 WL 323054.

The record reflects, and the Government does not dispute that, despite the Court's order that the IJ consider whether there are conditions of release that would mitigate any danger or flight risk, the IJ failed to do so. Dkts. 7, 8-1. The Government argues only that it does not believe the IJ was required to consider this issue in making his flight risk determination. Dkt. 7 at 3-4. For the reasons explained in this Court's order granting petitioner's first petition, the Court disagrees. *See Tavurov v. Noem*, 2026 WL 323054 at *8-9; *and see Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *11-12 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom. Belqasim v. Hermosillo*, No. 2:25-CV-01282-LK, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025) (requiring the IJ to allow petitioner to present evidence of financial circumstances or alternative conditions of release that would mitigate any potential dangerousness or flight risk).

The IJ's failure to consider this factor further shows that the bond hearing failed to comply with due process and with this Court's prior order.

## D.    Appropriate Remedy

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). The Court notes that its order granting in part petitioner's prior habeas petition directed that petitioner be provided a bond hearing within 7 days which complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) and that the IJ shall allow petitioner to present

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 17

evidence of financial circumstances or alternative conditions of release that would mitigate any potential dangerousness or risk of flight or in the alternative, the Government shall immediately release petitioner under appropriate conditions of release. *Tavurov v. Noem*, 2026 WL 323054. As discussed above, the bond hearing that was held failed to comply with due process or this Court's prior order.

Under the circumstances, "the Court finds no basis for petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026) (ordering immediate release where the Court determined the IJ abused his discretion in denying petitioner's bond request at bond hearing); *see Vasquez Lopez v. Hernandez,* No. C26-0775 TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) (finding the IJ abused his discretion in denying bond at the bond hearing and finding the proper remedy to be that "the Court will exercise its discretion to order petitioner's release"); *W.T.M.*, 2026 WL 262583, at *5; *Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, —— F.Supp.3d ——, ——, 2025 WL 3466312, at *11 (D.R.I. Dec. 3, 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing[.]"); *Miri v. Bondi*, Case No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering immediate release after finding IJ abused discretion in denying petitioner's request for bond at bond hearing).

## CONCLUSION

For the reasons discussed above the petition for writ of habeas corpus (Dkts. 6, 11) is GRANTED and the Court ORDERS:

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 18

1) The Government shall release petitioner from immigration custody on appropriate conditions of supervision within 24 hours of the date and time of issuance of this order.

2) The Government shall file a certification that petitioner has been released from immigration custody within 48 hours of the date and time this order was issued.

3) The Court will consider an appropriate post-judgment motion for attorney's fees.

Dated this 11th day of May, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 19